IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRADLEY BRIMBLECOM,

                    Plaintiff,                  OPINION AND ORDER

    v.

                                            18-cv-257-wmc

ANDREW M. SAUL,
*Commissioner of Social Security,*

                    Defendant.

---

       Claimant Bradley Brimblecom seeks judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g) denying his application for disability and disability insurance benefits.[1]  (AR 27.)  Brimblecom contends that the administrative law judge (the "ALJ") did not incorporate his mental impairments in formulating his residual functional capacity ("RFC").  Because I find that the ALJ adequately did so, the decision of the Commissioner will be affirmed.

## BACKGROUND

       Brimblecom applied for disability and disability insurance benefits on September 9, 2014, with an alleged disability onset date of April 8, 2014.  (AR 185.)  His application was initially denied on January 26, 2015 (AR 104), and again upon reconsideration on June 22, 2015 (AR 114).  Brimblecom was then granted an evidentiary hearing before ALJ

---

[1] As now reflected in the caption above, Andrew Saul has succeeded Nancy Berryhill as the Commissioner of the Social Security Administration and is now the named defendant in this case. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.  Later proceedings should be in the substituted party's name . . . .").

Peter Kimball on May 25, 2017.  (AR 13.)

At that hearing, Brimblecom testified that he was unable to return to work because of a myriad of symptoms, including a sore throat and headaches, as well as difficulty "trying to stay awake, bending, walking, [or] standing . . . for any long periods of time."  (AR 44.) He has not been gainfully employed since being terminated from his position with Link Snacks on August 10, 2014.  (AR 44, 210.)

## A.  Medical, Educational and Employment History

While working at Link Snacks in April of 2013, Brimblecom fainted.  (AR 303.) The resulting medical examination revealed a thyroid condition that Brimblecom believes contributes to his symptoms.  (AR 48.)  He has also been diagnosed with obstructive sleep apnea (AR 418), chronic obstructive pulmonary disorder ("COPD") (AR 445), throat polyps (AR 366), gastroesophageal reflux disease (AR 419), cervical strain (AR 420), and near synoptic episodes (AR 297).  Finally, he suffers from obesity.  (AR 422.)

In addition to these physical impairments, claimant's background suggests possible mental limitations.  When Brimblecom was nine years old he received a score of 72 on an IQ test; one year later his score improved to 87, although verbal deficiencies remained. (AR 402.)  At the time of the second test, Brimblecom was found to be "1 to 2 years behind in his school work."  (*Id.*)  Going forward, Brimblecom testified that he continued to struggle in school, especially with reading, writing, and mathematics, until being expelled from high school for disciplinary reasons.  (AR 41.)  Despite these struggles, Brimblecom earned his GED in 2016.  (AR 426.)

As an adult, Brimblecom has been employed as a cook and, more recently, a

sanitation worker (AR 210), although he testified that he struggled to remember orders as a cook (AR 43).  At the time of his hearing, Brimblecom testified that he still struggled with reading, although he did occasionally read the newspaper.  (AR 41-42.)  Further, he reported struggling with concentration and persistence due to his fatigue.  (AR 40.)  Even so, Brimblecom could drive for over an hour, mow the lawn, use a snow blower, had regular social interactions with his family, spent a considerable amount of time caring for his disabled wife, and performed household chores.  (AR 40, 50-53.)

### B.  ALJ Decision

The ALJ concluded that claimant Brimblecom had not engaged in any substantial gainful activity since April 8, 2014.  (AR 15.)  The ALJ also concluded that claimant had four, severe impairments: COPD, environmental allergies, obesity, and "a history of verbal performance deficits."  (*Id.*)

Balancing Brimblecom's testimony that he struggled with reading and understanding information while in school and during previous employment against the GED he earned after the onset of his claimed disability, and his testimony that he enjoyed reading the newspaper "and looking at magazines," the ALJ found that Brimblecom had a moderate impairment in "understanding, remembering, and applying information."  (AR 20.)  The ALJ further credited claimant's testimony that he had "trouble understanding orders, would lose track of things when trying to prep his work . . . and was not able to keep up" while working as a cook.  (*Id.*)

Finally, the ALJ determined that claimant had mild impairments in three other functional areas.  (AR 20-21.)  First, he found that Brimblecom was mildly impaired in his

ability to interact with others based on his interaction with his wife and other family, as well as his attendance at craft fairs to help his wife with her "pet bed business." (AR 20.) Second, after weighing Brimblecom's reported struggles with fatigue against his professed abilities to mow the lawn, use a snowblower, and drive over an hour to his hearing, the ALJ found a mild impairment as to his ability to concentrate, persist, and maintain pace. (AR 21.) Third, the ALJ found a mild impairment in claimant's ability to adapt and manage himself based on the claimant's testimony that while he did not prepare all of his meals because of fatigue, he performed household chores, tended to his own care, and assisted his disabled wife with her activities of daily living. (*Id*.)

At the same time, the ALJ noted that "no medical source has placed any limitation on [claimant's] ability to work due to cognitive or anxiety problems." (AR 18.) Finding that claimant's mental impairments fell short of the Paragraph B requirements -- either one functional area of severe impairment or two areas of marked impairment -- the ALJ concluded that claimant's impairments did not establish disability. (*Id.*)

Based on the entire record, the ALJ instead determined that with his limitations, claimant had the residual functional capacity to perform medium work with certain postural and environmental limitations, so long as the job did not require reading as a regular task. (AR 21.) The ALJ further found that claimant's mental impairments were adequately addressed by his formulation of the RFC. (AR 23.) Based on the testimony of a vocational expert, the ALJ concluded that there were a significant number of jobs in the national economy available to the claimant, including hand packager, laundry worker, and dish washer. (*Id.*) Accordingly, the ALJ found that claimant was not disabled. (*Id*.)

OPINION

This court must defer to an ALJ's decision to deny benefits unless it is unsupported by substantial evidence or based on an error of law. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). However, the ALJ must create an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). This means that although a reviewing court is not to "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the commissioner," *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citations omitted), the court must conduct a "critical review of the evidence" before affirming or overturning a decision to deny benefits, *McKinzey*, 641 F.3d at 889.

As previously noted, claimant contends that the ALJ erred by failing to incorporate his mental impairments into the RFC. More specifically, plaintiff argues that because "any job that [he] would seek would need, at a minimum, some mental ability to read." (Pl.'s Br. (dkt. # 7) 35.) This contention is flawed on a number of levels. First, the ALJ found that Brimblecom was only moderately limited in his ability to understand, remember or apply information, while mildly limited in three other functional areas, none of which indicated an *inability* to read. (AR 20-21.) As the ALJ explained: "[a] 'moderate' limitation means that the individual's ability to function in this area independently, appropriately, effectively and on a sustained basis is *fair*," while "[a] 'mild' limitation means that the

individual's ability to function in this area independently, appropriately and effectively, and on a sustained basis is *slightly limited*." (AR 19-20 (emphasis added).) Regardless, the ALJ's RFC included an explicit restriction that Brimblecom "never work in a position that would require reading as a regular job task." (AR 21.) This, the ALJ explained, "accommodates the claimant's 'moderate' restriction in understanding, remembering, or applying information; [and his] 'mild' restrictions in concentration, persistence or maintaining pace, interact[ing] with others and adapting or managing oneself." (AR 23.) The fact that claimant managed to earn his GED after his claimed disability date undermines any assertion that claimant is incapable of "some mental ability to read."

Second, as the ALJ recognized, his job was to "accommodate the claimant's various impairments *to the extent the weight of the objective medical findings and overall evidence support limitations*." (*Id.* (emphasis added).) Unfortunately for claimant, the administrative record completely lacks treatment notes post-dating 1973 that address *any* difficulty with reading comprehension. (*Id.*) Moreover, the ALJ appears to have properly considered and weighed conflicting evidence, including claimant's GED, his enjoyment of reading newspapers and magazines, and reports that he had trouble remembering orders and prep items while working as a cook, as well as difficulty with reading, writing and math while in school. Ultimately, the ALJ incorporated claimant's moderate limitation by preventing him from working at a job that required reading as a regular task.

Third, as to claimant's other mental limitations, the ALJ found them all to be "mild." (AR 20-21.) As noted before, a mild limitation is only a "slight" limitation. The overall evidence supports these findings as well, given claimant's undisputed residual ability

to interact with others, demonstrated by the time he continues to spend socializing with his family and the assistance he provided to his wife in selling products at craft fairs. (AR 20.) As for concentration, persistence and pace, the ALJ reasonably relied on claimant's ability to drive to the hearing for over an hour, his general ability to leave the house, and his ability to operate a lawnmower and snowblower successfully. (AR 21.) While the ALJ recognized claimant's reported fatigue and short patience, he ultimately concluded these were accommodated in the RFC, which seems reasonable, particularly, as to any claimed mental limitation on this record. (*Id.*) Finally, the ALJ found that claimant was only mildly limited in his ability to adapt or manage himself because of his ability to care for himself and his disabled wife. Consequently, none of the three recognized mild restrictions required additional RFC limitations.

Fourth, and finally, even assuming that the ALJ erred by failing to fully incorporate one or more of these mental limitations, such an error would be harmless. This court "will not remand a case to the ALJ for further consideration if [it] can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Here, it seems highly unlikely that the availability of positions cited by the vocational expert would be further limited upon remand because of the single moderate mental impairment, or one or more of the mild impairments, since none would appear to "significantly limit [a claimant's] physical or mental ability to do basic work activities." 40 C.F.R. § 404.1522(a). In particular, claimant himself fails to identify any additional restrictions that he contends should have been included, other than that the job should require *no* reading. (Pl.'s Br. (dkt. #7) 35-36.) As to that complaint, however, the

evidence of record is fairly overwhelming as to claimant's residual ability to perform jobs that requires some reading. Accordingly, the RFC formulated by the ALJ, limiting claimant to positions that did not "require reading as a regular job task," appears spot on and certainly not in conflict with the record. (AR 21.) Indeed, while it is true that claimant testified that he has "difficulty" reading (AR 41-42), there is, as discussed above, substantial evidence that he *can* read (even enjoys reading) sufficiently to have earned his GED, leaving the ALJ with at most conflicting evidence, which was within his discretion to weigh. Accordingly, this court sees no basis to challenge his conclusion that claimant could read, but that reading could not be a regular job task and the ALJ's decision is affirmed.

## ORDER

IT IS ORDERED that the decision by Andrew Saul, Commissioner of Social Security, denying claimant Bradley Brimblecom's application for disability and disability insurance benefits is AFFIRMED.

Entered this 12th day of July, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge